IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. CR-01-82-S-BLW |
| | ) | CV-04-248-S-BLW |
| Plaintiff-Respondent, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **DECISION AND ORDER** |
| BRIAN ADAMS NYE, | ) | |
| | ) | |
| Defendant-Petitioner. | ) | |
| _____ | ) | |

Pending before the Court is Petitioner Brian A. Nye's Motion to Vacate, Set

Aside, or Correct a Sentence Pursuant to 28 U.S.C. 2255 (Docket Nos. 102, 103,

and 113).  Also pending before the Court are his Motions for Default (Docket Nos.

140 and 142),  Motion for Partial Summary Judgment (Docket No. 141),

Application for Bail (Docket No. 145), and Motion for Leave to File Supplemental

Reply (Docket No. 157).  Finally, pending before the Court are the Government's

Motion to Dismiss Nye's § 2255 Motion (Docket No. 128) and  Motion to

Supplement Its Response to Nye's § 2255 Motion (Docket No. 138).

The Court, having reviewed the record and being otherwise fully informed,

enters the following Order.

**BACKGROUND**

**Memorandum Decision & Order - 1**

On June 15, 2001, an indictment (Docket No. 1) was filed against Petitioner Brian A. Nye ("Nye") alleging 42 counts of making false statements to the IRS, mail fraud, wire fraud, and witness tampering.  On December 11, 2001, a superseding indictment (Docket No. 25) was filed to add a charge of failure to appear.  On January 3, 2002, Nye pled guilty, pursuant to a plea agreement (Docket No. 45), to Counts 1, 11, 20, 26, and 41 of the Superseding Indictment.  The Government moved to dismiss the remaining Counts.

On June 25, 2002, following a lengthy sentencing hearing, the Court sentenced Nye to 51 months of imprisonment.  He subsequently appealed his sentence to the Ninth Circuit challenging, *inter alia*, the standard of proof and reliability of the evidence used in determining the amount of loss.  The Mandate from the Ninth Circuit (Docket No. 101) affirming the sentence was filed in this Court on January 2, 2004.

On May 26, 2004, Nye timely filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Docket No. 102) to which his Motion to Dismiss the Indictment was attached as Ground One (Docket No. 103).  Although docketed separately, the Motion to Dismiss appears to be part of the § 2255 Motion, and the Court will treat them as one motion.  Nye subsequently filed a Supplemental Motion to Correct Sentence under 28 U.S.C. § 2255 (Docket 113).

**Memorandum Decision & Order - 2**

This Supplemental Motion will also be treated as part of the § 2255 Motion.

On September 17, 2004, the Government filed a Motion to Dismiss Nye's § 2255 Motion. (Docket No. 128).  On November 8, 2004, without responding to the Government's Motion to Dismiss, Nye filed a Motion for Leave to Supplement § 2255 Filing based on ineffective assistance of counsel (Docket No. 133).  The Court granted Nye's Motion to Supplement on November 18, 2004 (Docket No. 138).  The Court directed the Government to file a response to the supplemental issue within thirty days of the date of the Order.

Because the Government failed to respond to the supplemental issue within thirty days, Nye filed a Motion for Default on December 29, 2004, and again on January 7, 2005 (Docket Nos. 140 and 142).  On January 25, 2005, the Government acknowledged its failure to timely respond and moved the Court for additional time based on not having received a copy of the Order.  (Docket No. 148).  After the Court granted the Government's motion, the Government filed its response on January 31, 2005 (Docket No. 150).

Having been unaware of the Court's Order to respond to the ineffective assistance of counsel claim, on December 3, 2004, the Government had filed a Motion to Supplement Its Response to Nye's § 2255 Motion (Docket No. 138).  The Government requested the Court to consider documents showing that Special

**Memorandum Decision & Order - 3**

Agent Christopher Reedy was a duly appointed criminal investigator for the Treasury Inspector General, Office of Tax Administration ("TIGTA"), during the investigation of Nye.  On January 3, 2005, Nye filed the Motion for Partial Summary Judgment (Docket No. 141) addressing the Government's then recent Motion to Supplement.  Finally, on June 27, 2005, Nye filed a Motion for Leave to File Additional Information (Docket No. 157) regarding the response to his Freedom of Information Act request he filed before commencing these proceedings.

For the reasons stated below, the Court will address only Nye's Motions for Default and the Government's Motion to Dismiss.  All other pending motions are moot.

## MOTIONS FOR DEFAULT

A movant is entitled to default judgment when the party against whom judgment is sought "has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise."  Fed. R. Civ. P. 55(a).  Nye contends that the Government's failure to respond within thirty days of the date of the Order entitles Nye to a default judgment.

Judgments by default are disfavored.  If a party has indicated its intent to defend an action, a default judgment is not appropriate.  *Direct Mail Specialists,*

Memorandum Decision & Order - 4

*Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 689 (9th Cir. 1988).

Because the Government had previously filed a Motion for Clarification of Issues

(Docket No. 20) and a Motion to Dismiss (Docket No. 128) regarding the initial

§ 2255 Motion, the Court finds that the Government clearly indicated its intent to

defend against the §2255 Motion.  Moreover, the confusion regarding whether a

response was required was caused by Nye's numerous filings.  Accordingly, a

default judgment is not appropriate, and the Court will deny Nye's Motions for

Default.

## MOTION TO DISMISS § 2255 MOTION

### A.    Standard of Law

Title 28 U.S.C. § 2255 provides four grounds under which a federal court

may grant relief to a federal prisoner who challenges the imposition or length of his

or her incarceration: (1) "that the sentence was imposed in violation of the

Constitution or laws of the United States"; (2) "that the court was without

jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the

maximum authorized by law"; and (4) that the sentence is otherwise "subject to

collateral attack."

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that a

federal district court judge must dismiss a § 2255 motion "[i]f it plainly appears

**Memorandum Decision & Order - 5**

from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." If the Court does not dismiss pursuant to Rule 4(b), the Court shall order the Government "to file an answer, motion, or other response within a fixed time, or to take other action the judge may order."

The Court may dismiss the § 2255 Motion at other stages of the proceeding such as pursuant to a motion by respondent, after consideration of the answer and motion, or after consideration of the pleadings and an expanded record. *See* Advisory Committee Notes following Rule 8 of the Rules Governing Section 2254 Proceedings incorporated by reference into the Advisory Committee Notes following Rule 8 of the Rules Government Section 2255 Proceedings.

If a motion to dismiss is filed by the Government, it should not be granted "unless it appears beyond doubt that Plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Clegg v. Cult Awareness Network,* 18 F. 3d 752, 754 (9th Cir. 1994). All allegations of material fact in the complaint are taken as true and construed in the light most favorable to the non-moving party. *See Buckey v. County of Los Angeles,* 968 F.2d 791, 794 (9th Cir.), *cert. denied,* 506 U.S. 909 (1992).

Generally, the Court may not consider any material beyond the pleadings in ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See*

**Memorandum Decision & Order - 6**

*Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir.), *cert. denied,* 114 S.Ct. 2704 (1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). If materials outside the pleadings are considered, the motion is converted to a motion for summary judgment governed by Rule 56. *See Jacobsen v. AEG Capital Corp.,* 50 F.3d 1493, 1496 (9th Cir. 1995).

But as *Branch* makes clear, there are times when documents other than the pleadings can be considered without converting a motion to dismiss into a motion for summary judgment. "[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch*, 14 F.3d at 453.

If the Court does not dismiss the proceeding, the Court then proceeds to a determination under Rule 8 of whether an evidentiary hearing is required. The Court need not hold an evidentiary hearing if the issues can be conclusively decided on the basis of the evidence in the record. *See Frazer v. United States*, 18 F.3d 778, 781 (9th Cir. 1994). Also, a hearing need not be held if the allegations are "palpably incredible or patently frivolous." *Blackledge v. Allison,* 431 U.S. 63, 67 (1977).

### B.    Nye's Claims in Support of His § 2255 Motion

**Memorandum Decision & Order - 7**

Nye asserts three grounds in support of his § 2255 Motion: (1) the Government officials' alleged failure to properly execute their oaths of office thereby depriving the Court of jurisdiction over the indictment proceedings, (2) the United States Supreme Court rulings in *Blakely* and *Booker*, and (3) ineffective assistance of counsel when the plea agreement was executed.  The Court will address each argument in turn.  Preliminarily, however, the Court notes that an unconditional guilty plea precludes a collateral attack based on *non-jurisdictional* antecedent rulings and cures antecedent constitutional defects.  *See United States v. Frady*, 456 U.S. 152, 167 (1982).  Such claims may not be brought absent a showing of cause for failure to raise the claim prior to entering a guilty plea or actual prejudice resulting from the alleged ruling or defect.  *Id.*

## 1.    Oaths of Office

Nye purports to raise jurisdictional claims which are not barred by *Frady* by contending that United States Attorney for the District of Idaho Thomas Moss, Assistant United States Attorney Lynne Lamprecht who prosecuted this case, and Special Agent of the Internal Revenue Service Chris Reedy, failed to comply with certain Acts of Congress requiring them to take an oath of office and submit an affidavit regarding the oaths.  Specifically, Nye contends that they failed to comply

with 28 U.S.C. §§ 544 and 3331-33.[1]   Nye concludes that due to these failures, the

offices were vacant thereby depriving the Court of jurisdiction over the criminal

proceedings.  He concludes that the indictment should be dismissed because of the

presence of unauthorized persons at the grand jury proceedings in violation of Fed.

R. Crim. P. 6(d).  *See* Mem. Br. in Supp. of Mot. to Dismiss the Indictment, at 7.

 Rule 6(d)(1) specifies those who may be present at a grand jury proceeding,

which includes attorneys for the government and the witness being questioned.

According to Rule 1(b)(1),[2]  "attorney for the government" includes "a United

States attorney or an authorized assistant."  Each United States attorney and

assistant United States attorney must take an oath to execute faithfully his or her

duties before taking office in order to be authorized.  28 U.S.C. § 544.

As shown below, a review of the record indicates that the requirements of

Rule 6(b) and 28 U.S.C. § 544 were met.

### a.    United States Attorney for the District of Idaho

At the time the original indictment was filed on June 15, 2001, D. Marc

Haws was the Interim United States Attorney for the District of Idaho having

---

[1]  As all of the oaths referred to in the cited statutes are generally administered at the same time and set forth in a single form entitled "Appointment Affidavits" signed by the attorney or other officer, they will be referred to herein collectively as the "oath" or "oath of office."

[2]  At the time the Superseding Indictment was filed, this provision was set forth in Fed. R. Cr. P. 54(c).

**Memorandum Decision & Order - 9**

executed his oath of office on April 20, 2001, and having been appointed on April

21, 2001.  *See* Government's Motion to Dismiss (Docket No. 128), Exhibit A.

Based on his Motion for Summary Judgment, Petitioner apparently concedes that

Interim U.S. Attorney Haws was compliant with the statutory provisions pertaining

to his oath of office.  *See* Docket No. 141.

　　　Thomas E. Moss was appointed the United States Attorney for the District of

Idaho on August 19, 2001, having taken the oath of office on August 15, 2001,

prior to taking office as required by statute.  *See* Docket No. 128, Exhibit B.  After

the Senate approved his appointment on November 19, 2001, Mr. Moss took the

oath of office on December 17, 2001.  *See id.,* Exhibit C.  The superseding

indictment was filed on December 11, 2001.  Mr. Moss had been in office for

several months prior to that.  The fact that he did not take the second oath of office

until six days after the superseding indictment was filed is irrelevant.  *See United*

*States v. Plesinski*, 912 F.2d 1033, 1039 (9th Cir. 1990), *cert. denied*, 499 U.S. 919

(1991) (failure of Special Assistant U.S. Attorney to renew oath after lapse of

appointment did not deprive the Court of jurisdiction where he continued to act

presumably in reliance on the original oath and renewed the oath immediately upon

discovering that his appointment was defective).  Relying on *Plesinski*, the Ninth

Circuit rejected a similar challenge based on a defect in the appointment of a

**Memorandum Decision & Order - 10**

Special Assistant U.S. Attorney.  *See United States v. Davis*, 932 F.2d 752, 763

(9th Cir. 1991) (finding subsequently validated appointment was at most a

procedural irregularity which did not deprive the Court of jurisdiction or prejudice

the defendant).

Presumably, Mr. Moss was acting in reliance on his original oath.

However, regardless of whether Mr. Moss was or not, Nye's challenge to the

indictment must fail.  First of all, Ms. Lamprecht, not Mr. Moss, conducted the

grand jury proceedings and signed the original and superseding indictments.[3]  *See*

Government's Response in Opposition to Summary Judgment and Renewed

Motion to Dismiss (Docket No. 150), p. 10, n. 4.  Second, dismissal of an

indictment for non-constitutional errors is not appropriate unless it is established

that the error "substantially influenced" the grand jury's decision to indict or the

error prejudiced the defendant.  *Plesinski*, 912 F.2d at 1038 (citing *Bank of Nova

Scotia v. United States*, 487 U.S. 250 (1988) and *United States v. Mechanik,* 475

U.S. 66, 71-72 (1986).

In support of his claim, Nye relies on *Pignatiello* which applied a per se rule

that any Rule 6(b) violation required dismissal of the indictment.  *See United States

v. Pignatiello*, 582 F.Supp. 251, 253-54 (D.Colo. 1984).  Nye's reliance on that

---

[3]  As shown below, Ms. Lamprecht's authority is not in question.

**Memorandum Decision & Order - 11**

District of Colorado case is misplaced for several reasons.  First of all, as stated above, the Court in *Plesinski* distinguished *Pignatiello* on the grounds that unlike the special prosecutor in *Pignatiello*, the special prosecutor in *Plesinski* had taken an oath of office at the time of his original valid appointment and was presumably relying on it.  Secondly, the motion to dismiss the indictment in *Pignatiello* was made prior to trial, a distinguishing factor noted by that court.  *Id.*  Most importantly, however, the Tenth Circuit found that in view of the then recent Supreme Court decision in *Mechanik* (cited in *Plesinski* as noted above),  the *per se* dismissal rule for violations of Rule 6(d) as applied in *Pignatiello* was no longer proper absent a showing of prejudice.  *See United States v. Kilpatrick*, 821 F. 2d 1456, 1468 (10th Cir. 1987).

Clearly, Nye has not demonstrated that Mr. Moss's failure to timely take the oath of office in any way influenced the grand jury's decision to indict or was otherwise prejudicial to him.  In fact, it is highly improbable that the members of the grand jury were even aware that he had not yet taken the second oath.

### b.    Assistant United States Attorney

Assistant United States Attorney Lynne Lamprecht was responsible for prosecuting the within action against Nye.  She conducted the grand jury proceedings and signed both the original and superseding indictments.  She was

**Memorandum Decision & Order - 12**

appointed for the District of Idaho on September 24, 2000, and took the oath of

office on October 5, 2000, more than one year before Nye's original indictment.

*See* Docket No. 128, Exhibit D.  Even though Ms. Lamprecht did not take the oath

*before* taking office in the District of Idaho, any defect in her appointment was

cured less than two weeks later and well before the time the indictment was filed.

Thus, the Court finds that AUSA Lamprecht met the requirements of Rule 6(d)

together with 28 U.S.C. § 544 and was authorized to appear before the grand jury.

Furthermore, based on his Motion for Summary Judgment, Petitioner apparently

concedes that Ms. Lamprecht compliant with the statutory requirements.

### c.      Special Agent Christopher Reedy

Petitioner contends that Special Agent Reedy committed perjury at the grand

jury proceedings by testifying that he was a Special Agent with the Office of the

Inspector General for the Tax Administration when in fact he had not taken the

required oath of office.  Again, Nye contends that this failure to take the oath and

the alleged perjury invalidated the grand jury proceedings.

Christopher Reedy became a criminal investigator for the IRS effective July

5, 1998 and for the Treasury Inspector General for Tax Administration

(TIGTA)effective January 17, 1999 as part of an IRS restructuring action.  *See*

Government's Motion to Supplement its Response (Docket No. 138), Exhibits A

**Memorandum Decision & Order - 13**

and B, Notifications of Personnel Action.  On February 12, 1999, he was issued an

identification card that evidenced that he was duly commissioned as a special agent

of TIGTA.  *See* Government's Motion to Dismiss (Docket No. 128), Exhibit E.

Agent Reedy took an oath of office in early 1999, shortly after becoming a TIGTA

special agent.  *See* Government's Response in Opposition (Docket No. 143),

Attached Affidavit.

     The documentation demonstrates that Agent Reedy was appointed as a

TIGTA agent prior to commencement of the investigation of the charges in this

case.  Although the Government has not produced the appointment affidavit

containing the oath of office, presumably it was executed prior to the issuance of

the identification card indicating that he was "duly commissioned."  Nye cannot

prove that Special Agent Reedy did not take the oath but only that it has not been

located.

     The Court need not (and indeed cannot in ruling on the Motion to Dismiss)

resolve the issue of whether Special Agent Reedy had taken the oath upon

appointment as a criminal investigator.  Even if he had not, however, his failure to

do so does not constitute grounds for dismissing the indictment and invalidating

Nye's conviction.

     Special Agent Reedy had taken the oath twice earlier, once as a student aide

**Memorandum Decision & Order - 14**

and once as a revenue officer.  *See* Petitioner's Response to Government's Motion

(Docket No. 129), Ex. A.  The oaths are the same, regardless of the position.  The

failure to take the oath for a third time could hardly be said to have influenced the

jury or prejudiced Nye.  Furthermore, Special Agent Reedy had *de facto* authority

to investigate Nye's criminal activity and testify before the grand jury about the

results of his investigation.

    One hundred years ago, the Ninth Circuit held that the validity of actions

performed by a person in a lawfully established office and exercising the functions

of the office by color of right cannot be attacked in collateral proceedings despite

the fact that the appointment may have been illegal.  *See United States v. Mitchell*,

136 F. 896, 906 (C.C.D.Or. 1905) (rejecting jurisdictional challenge based on

Assistant U.S. Attorney's failure to reside in district as required by predecessor

statute to 28 U.S.C. § 545).  Such an official is a *de facto* officer who could

continue in office until otherwise judicially declared in a separate proceeding to

have no right to the office.  *Id.*  As explained by the Second Circuit,

> The *de facto* officer doctrine was developed to protect the
> public from the chaos and uncertainty that would ensue if
> actions taken by individuals apparently occupying
> government offices could later be invalidated by
> exposing defects in the officials' titles. . . .  The doctrine
> has generally been applied to individuals who are in
> possession of an office, are performing the duties of the
> office, and who maintain an appearance of the right to the

**Memorandum Decision & Order - 15**

office.

*E.E.O.C. v. Sears, Roebuck and Co.*, 650 F.2d 14, 17-18 (2d Cir. 1981).

Relatively recently, *Mitchell* was relied upon by the Seventh Circuit in affirming the denial of relief in a § 2255 proceeding where the defendant challenged the court's jurisdiction on the grounds that the Assistant U.S. Attorney who prosecuted his case did not live within the district. *See Levine v. United States*, 221 F.3d 941, 943-44 (7th Cir. 2000) (explaining that the statutory requirement of in-district residence related only to government administration and not to jurisdiction). Even more recently, *Mitchell* was the basis of a state court's refusal to invalidate actions taken by an improperly selected city arbitrator. *See Vroman v. City of Soldotna*, 111 P.3d 343, 347 (Alaska 2005) (citing *Mitchell* and *Levine* and stating actions are considered *de facto* valid when the defect of authority is merely technical).

Likewise, the Supreme Court has recognized the *de facto* officer doctrine, explaining that it "confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient." *Ryder v. United States,* 515 U.S. 177, 180 (1995) (observing that the doctrine had been relied upon by the Supreme Court in several cases involving challenges by criminal defendants to the

**Memorandum Decision & Order - 16**

authority of the presiding judge in the criminal proceedings leading up to the challenged conviction).  *See also Nguyen v. United States*, 539 U.S. 69, 77-78 (2003) (recognizing the *de facto* officer doctrine and observing that a judge's actions are valid *de facto* when there is only a technical defect in statutory authority).

Based on the above, it is clear that any failure on the part of Special Agent Reedy to take his oath (if, in fact, he did fail to do so) does not constitute grounds for § 2255 relief both because Nye is asserting it in a collateral proceeding and because Nye has not alleged that Special Agent Reedy's failure to take the oath resulted in any prejudice or that he acted beyond the scope of authority of a properly appointed TIGTA officer.  Significantly, Nye has also not alleged that any part of Special Agent Reedy's substantive testimony regarding the results of his investigation was perjurious.

**2.**     ***Blakely/Booker* Issues**

A review of the record indicates that Nye's base offense level of six had been increased by eleven based on the amount of expected loss.  Additionally, Nye received several enhancements to the resulting offense level, including two points for more than minimal planning, two points for sophisticated means, two points for abusing a position of private or public trust, and two points for obstruction of

**Memorandum Decision & Order - 17**

justice.  Nye argues that his sentence should be corrected because the

enhancements had not been alleged in the indictment and had been imposed using a

preponderance of evidence standard in violation of the rule of *Blakely v.*

*Washington*, 542 U.S.__, 124 S.Ct. 2531, 2537 (2004).

In *Blakely*, the Supreme Court invalidated a sentencing enhancement

imposed in a state court sentencing scheme that was based on facts neither

admitted by the defendant nor decided by a jury beyond a reasonable doubt.

*Blakely*, 124 S.Ct. at 2538.  Although *Blakely* did not invalidate the federal

sentencing guidelines, the Supreme Court subsequently extended the rule of

*Blakely* to those guidelines.  *See United States v. Booker*, __U.S.__, 125 S.Ct.

738, 756 (2005).  After finding the mandatory nature of the guidelines violated

the Sixth Amendment right to trial by jury, the Court then remedied the

constitutional defect by rendering the guidelines advisory.  *Id.* at 756-57.  Rather

than simply imposing a guideline sentence, the sentencing court is to consider the

guidelines together with the sentencing goals set forth in 18 U.S.C. 3553(a).  *Id.* at

764-65.  Nye promptly raised a *Booker* claim in his Renewed Application for Bail

(Docket No. 145) and supporting Memorandum (Docket No. 146).

These recent developments, however, do not constitute grounds for

reconsidering or correcting Nye's sentence.  His conviction was final on direct

**Memorandum Decision & Order - 18**

review before *Blakely* was decided.  The Ninth Circuit recently held that *Blakely* does not apply retroactively to cases on collateral review.  *See Schardt v. Payne*, Slip Op. No. 02-36164 (9th Cir. July 8, 2005).  Obviously, Petitioner's conviction was also final on direct review before *Booker* was decided.  As the Ninth Circuit recognized in *Schardt*, several other circuits have held that  *Booker* cannot be applied retroactively to cases on collateral review.  *Id*. at *9; *See McReynolds v. United States*, 397 F.3d 479 (7th Cir. 2005); *Varela v. United States*, 400 F.3d 864 (11th Cir. 2005); *Humphress v. United States*, 398 F.3d 855 (6th Cir. 2005).  In fact, the Third Circuit recently observed that every circuit that has considered the *Booker* retroactivity issue has concluded that *Booker* does not apply to cases on collateral review.  *See Lloyd v. United States*, 407 F.3d 608 (3rd Cir. 2005).

### 3.    Ineffective Assistance of Counsel

Nye alleges that his counsel was ineffective when the plea agreement was executed.  Specifically, Nye alleges that his attorney (1) failed to object to factually incorrect statements in the plea agreement and made at the plea proceedings, and (2) stated that he was not familiar with the Federal Sentencing Guidelines.

To prove a violation of the Sixth Amendment's requirement of effective assistance of counsel, a defendant generally must establish that (1) counsel's representation fell below an objective standard of reasonableness, and (2) but for

**Memorandum Decision & Order - 19**

counsel's errors, there is a reasonable probability that the result of the proceeding

would have been different.  *Strickland v. Washington*, 466 U.S. 668, 687-88

(1984).  There is a strong presumption of reasonableness:

> Judicial scrutiny of counsel's performance must be
> highly deferential.  It is all too tempting for a defendant
> to second-guess counsel's assistance after conviction or
> adverse sentence, and it is all to easy for a court,
> examining counsel's defense after it has proved
> unsuccessful, to conclude that a particular act or omission
> of counsel was unreasonable. . . . a court must indulge a
> strong presumption that counsel's conduct falls within
> the wide range of reasonable  professional assistance.

*Id.* at 690.

The *Strickland* two-part test is applicable to a case in which a defendant

contends that his counsel was constitutionally inadequate during the guilty plea

process.  *Hill v. Lockhart*, 474 U.S. 54, 58 (1985).  The Court may consider the

performance and prejudice components of the *Strickland* test in either order.

*Strickland*, 466 U.S. at 697.   Furthermore, the Court need not consider one

component if there is an insufficient showing of the other.  *Id.* To show prejudice

in the guilty plea context, a defendant must show "that there is a reasonable

probability that, but for counsel's errors, he would not have pleaded guilty and

would have insisted on going to trial."  *Hill*, 474 U.S. at 58-59.

Nye does not carry his burden under *Strickland* and *Hill*.

**Memorandum Decision & Order - 20**

### a.   Factual Allegations

Nye fails to allege that he would have insisted on going to trial if defense counsel had raised objections to certain facts that he now claims were inaccurate or misrepresented.  Instead, Nye alleges that if counsel had raised these objections, "the plea agreement would have been substantially different than it is."  Motion for Leave to Supp. 2255 Filing (Docket No. 133), at 13.  Whether the Government would have offered another plea agreement offered is pure speculation.

Nye's allegations regarding the factual bases in the plea agreement appear to be an attack on the plea agreement masquerading as an ineffective assistance of counsel claim.  Had they not been brought within the context of an ineffective assistance of counsel claim, they would clearly have been procedurally barred.  *See United States v. Frady,* 456 U.S. 152, 167-168 (1982); *Bousley v. United States,* 523 U.S. 614, 621-22 (1998).  This is the first time that Nye has challenged those factual bases.  He did not seek to withdraw his plea prior to the sentencing despite being represented by a new attorney to whom he referred at the sentencing as "excellent counsel."  *See* Sent. Tr. at 132.  He did not raise the issue on direct appeal despite being represented by yet another attorney.  He did not even raise the issue until six months after he filed his initial § 2255 Motion.  Nye has shown neither cause for not having raised the issue prior to this time nor resulting

Memorandum Decision & Order - 21

prejudice.

However, even analyzing the issue in an ineffective assistance of counsel context, Nye's claim must fail. The long delay in bringing this claim indicates to the Court that Nye's claims are not credible.  In addition, his claims of factual inaccuracies are totally rebutted by the record.

By signing the plea agreement, Nye agreed to the allegations set forth in the factual basis for each count.  *See* Plea Agreement at pp. 3-12.  Also, the record of the plea hearing indicates that the Court engaged in an extensive Rule 11 plea colloquy.  It reveals that defense counsel had indeed advised the Court that Defendant was "somewhat concerned and frustrated" with some of the "embellishment of the dialogue" in certain of the factual bases in the plea agreement.  Plea Tr. at 4.  Nevertheless, Nye, after listening to the Government's detailed summary of conduct underlying each count, agreed with each summary. *Id.* at 16-17 (Count 1), 19 (Count 11), 24 (Count 20), 25 (Count 26), and 28 (Count 41).  Nye stated that he was entering a voluntary plea of guilty to each of the five counts because he was in fact guilty of those charges.  *Id.*  The Court then asked Nye to describe his conduct.  *Id*. at 28 to 33.  In doing so, Nye clarified and explained some points, but nevertheless again agreed that if the jury accepted as true the evidence as stated by the Government, there would be a proper factual and

**Memorandum Decision & Order - 22**

legal basis for a finding of guilty.  *Id.* at 29-30 (Count 1), 31 (Count 20), 32 (Count 26), 32-33 (Count 41).  Nye then stated that he agreed with the prosecutor's summary in Court of his conduct pertaining to each of those Counts.  *Id.* at 33. Finally, Nye stated that he had read, gone over with his attorney, and understood every provision of the plea agreement.  *Id.* at 34.

Statements made in open court at the time of a plea hearing carry a strong presumption of verity and are entitled to great weight.  *Chizen v. Hunter*, 809 F.2d 560, 562 (9th Cir. 1986) (citing *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see also U.S. v. Kazcynski*, 239 F.3d 1108, 1114-15 (9th Cir. 2001) ("substantial weight" must be given to in-court statements).  While that presumption is not necessarily an insurmountable barrier to an evidentiary hearing, contentions that in the face of the record are "wholly incredible" are subject to summary dismissal. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  The allegations in Nye's § 2255 Motion are directly contradicted by his sworn testimony in the record.  The Court finds it "palpably incredible" and "patently frivolous" for Nye to argue that defense counsel failed to object to something Nye so willingly agreed to under oath.

### b.    Unfamiliarity with Sentencing Guidelines

Likewise, Nye fails to allege that he would have insisted on going to trial

had he known of counsel's alleged unfamiliarity with the sentencing guidelines. Nye instead alleges that due to counsel's unfamiliarity with the guidelines, he was not aware that his sentence could be enhanced by elements not included in the plea agreement. *See* Motion for Leave to Supp. 2255 Filing (Docket No. 133), at 13. However, Nye's signing of the plea agreement and entering a plea of guilty directly contradicts this allegation.

In signing the plea agreement, Nye agreed that he understood that the sentencing judge was not required to accept or be bound by the terms of the plea agreement and might impose a more severe sentence than anticipated by the parties. *See* Plea Agreement ¶ 18. Furthermore, at the plea hearing, Nye stated that he had discussed the sentencing guidelines with defense counsel and was advised by the Court that the sentencing judge would use a number of factors relating to the seriousness of the offense, any prior criminal history, and all circumstances related to his current criminal conduct, including matters not charged by the Government. *See generally* Plea Tr. at 6-9. Nye stated he understood. *Id.* The Court also advised Nye that the sentencing judge could impose a sentence more severe than that anticipated by the parties. *Id.* at 35. The Court concluded that there was a factual basis for Nye's plea of guilty, and that it was entered voluntarily, with full knowledge of the consequences. *Id.* at 38.

**Memorandum Decision & Order - 24**

Indeed, there is nothing in the record to indicate that Nye did not willingly enter into the plea agreement or that Nye would have rejected the plea and insisted on going to trial but for counsel's alleged unfamiliarity with the Guidelines.

In addition to finding the claims themselves palpably incredible and patently frivolous, the Court finds that it is incredible to believe that Nye would have gone to trial to face 43 counts, including a count that carried a mandatory consecutive sentence of 5 years, rather than plead guilty to the 5 counts in the plea agreement, the factual bases of which he admitted under oath.[4]   There is simply nothing in the record to indicate that he would have rejected the plea and insisted upon going to trial.  Furthermore, any ineffective assistance on the part of counsel who negotiated the plea agreement would presumably have been recognized and remedied by sentencing counsel whose effectiveness Nye does not question.

Having determined that Nye has not demonstrated the prejudice prong of *Strickland*, the Court need not address whether or not plea counsel's assistance was indeed ineffective.  *See Strickland*, at 466 U.S. at 697.

## CONCLUSION

As stated above, the Defendant's Motions for Default are denied.

---

[4]  It is interesting to note that Defendant stated at the plea hearing that the Government had "predicted" a sentence of between 4 and 5 years.  The sentence imposed was near the low end of that range.

**Memorandum Decision & Order - 25**

Furthermore, the Court finds that it does not appear from the face of Nye's motions or the record of the prior proceedings that he is entitled to relief on any of his claims. Therefore, the Court will grant the Government's Motion to Dismiss without holding an evidentiary hearing. All other pending motions are moot.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that the Government's Motion to Dismiss Nye's§ 2255 Motion (Docket No. 128) is GRANTED.

IT IS FURTHER HEREBY ORDERED that Nye's Motion for relief pursuant to 28 U.S.C. § 2255 (Docket Nos. 102, 103, and 113) is DENIED.

IT IS FURTHER HEREBY ORDERED that Nye's Motions for Default (Docket Nos. 140 & 142) are DENIED.

IT IS FURTHER HEREBY ORDERED that the Government's Motion to Supplement Its Response (Docket No. 138), Nye's Motion for Partial Summary Judgment (Docket No. 141), Nye's Application for Bail (Docket No. 145), and Nye's Motion for Leave to File Supplemental Reply (Docket No. 157) are MOOT.

IT IS FURTHER HEREBY ORDERED that Case No. CV-04-248 is DISMISSED in its entirety with prejudice.

**Memorandum Decision & Order - 26**

DATED:  **July 28, 2005**



B. LYNN WINMILL
Chief Judge
United States District Court

**Memorandum Decision & Order - 27**